UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DAVID STILES and JEANIE STILES,          :
                                          :     10 Civ. 2605 (SHS)
                    Plaintiffs,           :
                                          :     OPINION & ORDER
            -against-                     :
                                          :
HARPERCOLLINS PUBLISHERS LLC,             :
CONN IGGULDEN and HAL IGGULDEN,           :
                                          :
                    Defendants.           :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

     This copyright action arises out of books about tree houses. Plaintiffs David and Jeanie Stiles allege that defendants HarperCollins LLC and Conn and Hal Iggulden misappropriated their copyrighted tree-house-in-one-tree design and related illustrations. Defendants move to dismiss the complaint on the ground that their works are not substantially similar to plaintiffs'. Plaintiffs oppose that motion and cross-move for partial summary judgment on the ground that defendants' illustrations are substantially similar to their own illustrations. Because the Court finds that defendants' works are not substantially similar to the protectible expression in plaintiffs' works, the Court grants defendants' motion to dismiss.

**I.    BACKGROUND**

    A.    <u>Parties</u>

     Plaintiff David Stiles is the author of *The Tree House Book*, which was published in 1979, (Compl. ¶¶ 13-14), and wrote, along with his wife Jeanie Stiles, *Tree Houses You Can Actually Build*, published in 1998, (*id.* ¶ 16).

     Defendants Conn and Hal Iggulden are the authors of *The Dangerous Book for Boys* ("*The Dangerous Book*") and *The Pocket Dangerous Book for Boys: Things To Do* ("*The Pocket*

1

*Book*"), published in 2006 and 2007, respectively.[1]  (*Id.* ¶ 5.)  Defendant HarperCollins publishes, markets, advertises, and sells these two books.  (*Id.* ¶ 8.)

      B.  Summary of the Parties' Works

The following overview is based on the Court's examination of the four works at issue in this action.

        1.  Plaintiffs' Books

*The Tree House Book* and *Tree Houses You Can Actually Build* (collectively, "The Tree House Books") are, not surprisingly, books about how to build tree houses.  They each contain an essentially identical seven-page chapter about how to build a "basic" tree house in a single tree.  *The Tree House Book* at 26-32; *Tree Houses You Can Actually Build* at 61-67.  This chapter comprises thirteen hand-drawn illustrations of the construction process, along with short captions.

The title page of the chapter features a full-page illustration of a finished tree house built around a single tree.  *The Tree House Book* at 26; *Tree Houses You Can Actually Build* at 61.  This tree house has four short walls, each of which consists of three overlapping horizontal panels set between four corner posts.  The corner posts hold up a pyramid-shaped roof that is covered with overlapping shingles.  Diagonal braces connect the corners of the base of the house to the tree, which is surrounded by leaves.  In this illustration, five boys can be seen playing inside the tree house as a girl climbs up a dangling rope ladder.

Following the title page come step-by-step illustrations of how to build that tree house.  The second page contains three images of platform construction on a leafy tree.  *The Tree House Book* at 27; *Tree Houses You Can Actually Build* at 62.  In the first image, a man nails two parallel 2x6 pieces of wood, seven feet long, into opposite sides of the tree.  Next, two more

---

[1] Defendant Hal Iggulden has been voluntarily dismissed from this action.  (*See* Dkt. # 30.)

parallel 2x6s are placed on top at right angles to the first 2x6s.  In the last of these images, a man places a level on a 7x7 square-foot frame that has been built around the two perpendicular sets of 2x6s.

The third page depicts the construction of four corner braces.  *The Tree House Book* at 28; *Tree Houses You Can Actually Build* at 63.  The main image is of a completed platform with corner braces that run diagonally from the base of the platform to the tree.  Five more detailed images focus on the forty-five and ninety degree "angle cuts" made on each brace so that the braces can fit inside the corners of the frame.  Three of these five images show the insertion of nails.

The fourth page contains a single up-close illustration of a half-finished floor—including a trapdoor—that covers the tree-house's platform.  *The Tree House Book* at 29; *Tree Houses You Can Actually Build* at 64.  The fifth page shows an angled view of the completed tree-house frame—the lower half of which consists of a window sill held up by short vertical posts spaced between the corner posts, the upper half of which consists of a square frame, on a plane parallel to the platform, which is connected to the corner posts by 2x4 braces.  *The Tree House Book* at 30; *Tree Houses You Can Actually Build* at 65.  The sixth page provides a bird's-eye view of a man on a ladder who builds the tree-house walls by fitting overlapping horizontal boards between the corner posts.  *The Tree House Book* at 31; *Tree Houses You Can Actually Build* at 66.  Finally, the seventh page shows a half-completed roof frame built out of a grid of rafters that form a pyramid shape.  *The Tree House Book* at 32; *Tree Houses You Can Actually Build* at 67.

    2.  *Defendants' Books*

*The Dangerous Book* is an eclectic mix of stories, games, tricks, and activities designed for boys.  *The Pocket Book* is a shorter and smaller version of *The Dangerous Book*, focusing on

"things to do." Both books include a chapter entitled "Building a Tree House" with hand-drawn illustrations embedded in paragraphs of text. *See The Dangerous Book* at 21-26; *The Pocket Book* at 21-37. The six-page chapter in *The Dangerous Book for Boys* contains twelve illustrations; the seventeen-page chapter in the smaller *Pocket book* contains ten illustrations, which, for the most part, correspond to the illustrations in *The Dangerous Book*. Just as in plaintiffs' illustrations in The Tree House Books, defendants' illustrations depict the materials used to build a tree house in one tree, as well as the tree house itself at various stages of construction.

The first illustration in *The Dangerous Book*'s tree-house chapter is of a finished tree house built around a single tree, as seen from roughly eye-level. *The Dangerous Book* at 21. This tree house appears to have four short walls, each made of eight horizontal panels that frame the corner posts. The pyramid-shaped roof, which is held up by corner posts, consists of triangular sides also made of horizontal panels. A diagonal ladder leads into the bottom of the tree house. No one is inside the structure.

On the second page of the chapter, *The Dangerous Book* begins to describe and illustrate the building process. *Id.* at 22. The second page shows three up-close images of spotted wood panels on a spotted tree. Each of these images represents a different step of platform construction: first, the attachment of two parallel 2x6 planks that are seven feet long to opposite sides of the tree; second, the attachment of two more parallel 2x6s on top at right angles to the first 2x6s; and third, a 7x7 square foot rectangular frame built around the planks that are attached to the trees.

The third page displays another set of illustrations embedded in the text: an image of the finished lower half of the tree house, focusing on the braces and screws that support its base, and

two detailed images of angular joint cuts on braces that fit into the corners of the platform. *Id.* at 23. The fourth page features an image of one side of the tree house's frame, including vertical and diagonal beams between the corner posts; a horizontal ledge; and a square frame at the top of the corner posts on a plane parallel to the platform. *Id.* at 24. This page also contains an image of a joist with a triangle cut out in order to fit over the top of the frame. In a view from the ground up, the fifth page shows the inside of the roof, which is framed by eight 2x4 joists and covered by a plastic membrane. *Id.* at 25. Also on this page is an image of a free-standing trapdoor. The final page then has the same illustration of the completed tree house that appears on the first page. *Id.* at 26.

   *The Pocket Book* contains most of the same text and many of the same illustrations as *The Dangerous Book*. There are a few notable differences in the illustrations: Although most pages in *The Pocket Book* are dominated by text, the illustrations tend to take up a greater portion of the smaller pages. The first and last images in the chapter—of the finished tree house—are in color and do not display a ladder. *The Pocket Book* at 24, 37. While *The Dangerous Book* shows three progressive images of platform construction, *The Pocket Book* has only one image of a nearly completed platform that consists of perpendicular planks on a cut-off tree trunk, surrounded by a frame. *Id.* at 26. In its head-on illustration of the tree house's skeleton, *The Pocket Book* exposes some of the floor, *id.* at 31, and its roof illustration shows the outside as well as the inside of the plastic roof membrane, *id.* at 35. Additionally, *The Pocket Book* features one image that *The Dangerous Book* does not: a close-up of three wooden braces coming out of a tree trunk, with screws pointed in the direction of where they should be inserted. *Id.* at 29.

   C. This Action

The complaint in this action asserts copyright infringement claims against all defendants, and contributory and/or induced infringement claims against Conn Iggulden, based on defendants' misappropriation of the allegedly copyrighted "tree house in one tree design" that appears in The Tree House Books. Plaintiffs seek money damages and an injunction.

Defendants have now moved to dismiss the complaint on the ground that there is no substantial similarity as a matter of law between the two sets of works. Plaintiffs oppose the motion to dismiss and cross-move for partial summary judgment that defendants' illustrations are substantially similar to theirs.

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss Standard

In evaluating a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). A complaint should be dismissed if it fails to set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

Although on a Rule 12(b)(6) motion a court normally considers only the allegations in the complaint, documents outside the complaint may be considered if the documents are integral to the pleading or subject to judicial notice. *See Global Network*, 458 F.3d at 153. In a copyright

action, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir. 2010) (internal citations omitted).

### B. Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute as to a material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## III. DISCUSSION

### A. Substantial Similarity

To establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiffs' work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Peter F. Gaito,* 602 F.3d at 63 (quotation marks and citation omitted). Because defendants seek to dismiss plaintiffs' claims based on a lack of substantial similarity, and because plaintiffs seek partial summary judgment on the same issue, the Court will for

purposes of these motions assume that plaintiffs have a valid copyright and that actual copying has occurred, and therefore focus on the issue of substantial similarity.

In the Second Circuit, the "standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Id.* at 66 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999))). This so-called "ordinary observer" test asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)). Where, as here, the works at issue contain both protectible and nonprotectible elements, the analysis should be "more discerning"—that is, the court should "attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Id.* (quoting *Knitwaves, Inc.*, 71 F.3d at 1002). "It is a fundamental principle of our copyright doctrine that ideas, concepts and processes are not protected from copying." *Attia v. Soc'y of the New York Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999) (citing *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.)); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.")

The Second Circuit has cautioned, however, that courts "should not dissect" the works at issue "into separate components and compare only those elements which are in themselves copyrightable." *Peter F. Gaito*, 602 F.3d at 66. Instead, courts should compare the works' "total

concept and overall feel . . . as instructed by [] good eyes and common sense." *Id.* (internal citations omitted); *see also Williams v. Crichton*, 84 F.3d 581, 589 (1996). "Thus, in the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Peter F. Gaito*, 602 F.3d at 66 (internal citation omitted).

Although the question of substantial similarity often must be resolved by a jury, a district court may "resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Id.* at 64 (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). Where, as here, the works are integral to the complaint, "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id.* The question of substantial similarity in copyright cases is generally not determined through expert testimony. *See Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992) (noting that copyright actions involving computer programs are an exception to the general rule limiting expert testimony on the question of substantial similarity).[2]

B. <u>Application</u>

---

[2] Plaintiffs have submitted two declarations in opposition to defendants' motion to dismiss and in support of their own motion for partial summary judgment. One declaration is by Don Metz, whom plaintiffs call an "architectural expert." The other is by plaintiff David Stiles, an "expert on tree house design and construction." (*See* Pl.'s Memo in Opp. to Mot to Dismiss and in Supp of Cross-Mot. for Summ. J. at 2.) Defendants object to the Court's consideration of these declarations because defendants had no notice that plaintiffs would rely on experts and no opportunity to depose plaintiffs' experts or to consult experts of their own. Defendants further point out that discovery has been stayed in this action pending resolution of the motion to dismiss. Because this Court can decide the question of substantial similarity on a motion to dismiss without any expert testimony, it will not consider the declarations submitted by plaintiffs. *See Peter F. Gaito*, 602 at F.3d at 65.

The Court has reviewed the works in question. Applying the "more discerning observer" test, the Court finds that, as a matter of law, plaintiffs' and defendants' works are not substantially similar. Although there are obvious similarities between the tree house designs and illustrations, "the similarities do not go beyond the concepts and ideas [and process] contained in plaintiffs' drawings." *Attia*, 201 F.3d at 55; *see also Peter F. Gaito*, 602 F.3d at 67 (ruling on a motion to dismiss that alleged similarities between architectural plans are nonprotectible concepts and ideas).

### 1. The Alleged Similarities Between Tree House Designs are Nonprotectible

Plaintiffs cite the following similarities between the parties' tree house designs:

- Both tree houses use only one tree, which extends through the middle of the platform.
- Both tree houses use platforms that measure seven by seven feet.
- Both tree houses begin construction by attaching 2x6 boards to the tree.
- Both tree houses have three fasteners where the boards meet the tree.
- Both tree houses add a second layer of 2x6 boards above and perpendicular to the first layer.
- Both plaintiffs' and defendants' works warn the builder not to stand on the platform before installing the support braces.
- Both tree houses have a perimeter platform frame nailed to the diagonal support beams below.
- Both sets of works show the same unique joint cut, which joins the diagonal braces to the corners of the frame.
- Both tree houses use braces to support the floor decking.

- Both tree houses use a trapdoor entrance in the floor.

- Both tree houses use framed walls with clapboard approximately halfway up.

- Both tree houses use eight 2x4 roof joists, four corners and four sides.

(Compl. ¶¶ 24-35; 40-51).

However, "[c]onsideration of these examples . . . shows that no more was taken than ideas and concepts." *Attia*, 210 F.3d at 56. The concept of a tree house built in a single tree is not protectible. *See* 17 U.S.C. § 102(b). And the basic idea for a tree house with four short walls, a pyramid-shaped roof, and a trapdoor is hardly original. As plaintiffs themselves acknowledge, the particular dimensions of their tree house—such as a 7x7 foot platform—are not entitled to copyright protection. (*See* Pl.'s Memo in Opp. to Mot to Dismiss and in Supp of Cross-Mot. for Summ. J. at 1.) By the same token, the standard dimensions of plaintiffs' chosen building materials are not copyrightable.

Other instances of substantial similarity cited by plaintiffs—the use of three nails to connect planks to a tree, a platform nailed to diagonal support beams, braces that are cut to fit into the corners of a frame—simply represent "generalized ideas and concepts pertaining to the placement of elements." *Attia*, 201 F.3d at 57; *see id.* at 56 ("The placement of a new building, the use of truss technology to transfer weight, the alignment of floor heights and corridors, . . . the arrangement of space on particular floors—these are no more than rough ideas of a general nature."); *North Forest Dev., LLC v. Walden Ave. Realty Assoc. LLC,* No. 06 Civ. 378, 2009 WL 5959961, at *4 (W.D.N.Y. July 22, 2009) (report and recommendation), *adopted by* 2010 WL 741992 (W.D.N.Y. Feb. 26, 2010) ("[N]o protection is afforded for 'standard configuration of space, and individual standard features such as windows, doors and other staple building components, as well as functional elements whose design or placement is dictated by utilitarian

concerns."). Moreover, the warning in both sets of works that builders should not stand on an unsupported frame is a caveat that surely belongs in the domain of commonsense, not copyright.

Plaintiffs further contend that even if these individual elements are not copyrightable, their arrangement and combination is in fact copyrightable. Indeed, both sets of works illustrate a similar process for building a tree house in one tree. However, a process is not entitled to copyright protection. *See* 17 U.S.C. § 102(b); *Attia*, 201 F.3d at 54. The similar order of construction presented in the two works—platform, followed by braces, followed by frame for walls and roof—is "dictated by utilitarian concerns." *North Forest Dev.*, 2009 WL 5959961 at *4. It would be difficult, if not impossible, to erect a wall prior to building the platform on which it stands or to lay a roof prior to erecting the frame that supports it.

What results from this construction process is, in plaintiffs' own words, a "basic" tree house design. As discussed below in a comparison of the completed tree house illustrations, where plaintiffs and defendants add on to this basic design, their creative expression differs. For example, they cover their roofs differently, clad their walls differently, and feature their ladders differently.

Moreover, the literary expression in the two sets of works varies. Whereas plaintiffs rely on short captions to accompany their large illustrations, defendants wrap their smaller illustrations in paragraphs of text that provide detailed instructions and commentary. As a result, the total concept and overall feel of the respective chapters on tree houses is distinct. *See Lapine v. Seinfeld*, 375 Fed. Appx. 81, 83 (2d Cir. 2010) (two cookbooks based on same idea have different "total concept and feel" because one "lacks the extensive discussion" that "pervades" the other).

    2. *The Illustrations are Not Substantially Similar*

Plaintiffs allege that the hand-drawn illustrations in both sets of works are substantially similar in point of view, layout, and perspective. Specifically, plaintiffs focus on the illustrations of the completed tree house and the illustrations of platform construction.

To the extent that both plaintiffs' and defendants' images of a completed tree house contain the common, nonprotectible elements previously addressed—four short walls, pyramid-shaped roof, diagonal braces—they certainly are similar. However, a visual comparison reveals significant aesthetic differences. Plaintiffs' roof is covered with shingles; by contrast, defendants' roof is covered with horizontal wood planks. Plaintiffs' walls are made of three overlapping horizontal boards; by contrast, defendants' walls are made of eight flush horizontal boards. Plaintiffs' corner posts are outside the walls; by contrast, defendants' corner posts are inside the walls. Plaintiffs' ladder is made of rope and dangles from the right side of the tree house; by contrast, defendants' ladder (in *The Dangerous Book*) is made of wood and leads up the left side of the tree house at an angle. Plaintiffs' illustration depicts a scene with a group of boys playing in the tree house and a girl climbing up the tree-house ladder; by contrast, no people appear in defendants' illustrations. Leaves surround plaintiffs' tree house; by contrast, no leaves are visible in defendants' tree-house image. Whereas the perspective in plaintiffs' illustrations looks down into the tree house from above, defendants' tree house is viewed head on.

Plaintiffs also contend that their three illustrations of platform construction are substantially similar to defendants' three illustrations of platform construction in *The Dangerous Book*, and that the third of these illustrations by plaintiffs is substantially similar to the single platform illustration in *The Pocket Book*. As in plaintiffs' books, *The Dangerous Book* shows the construction of a platform through three progressive images of two, then four, then eight

13

planks of wood. Yet these generalized ideas about how to arrange wooden planks to form a square platform is not copyrightable. And a visual comparison here too reveals significant aesthetic differences. Plaintiffs' images are viewed from a greater distance and from a different angle than those in *The Dangerous Book*. As a result, plaintiffs' images show more of the tree, including branches and leaves. In one of plaintiffs' images a man hammers nails, and in another a man places a level on the completed platform frame. *The Dangerous Book*'s images, on the other hand, contain no human figures. In *The Dangerous Book*'s illustrations, unlike in plaintiffs', the wood is spotted and screws are visible. Meanwhile, *The Pocket Book*'s illustration differs from plaintiffs' in that the tree trunk is cut off, screws are visible, and the platform, seen in up close, is not complete.

      Plaintiffs do not devote attention to other illustrations in the two sets of works, presumably because the contrasts are even more striking. And on top of all the individual dissimilarities between plaintiffs' and defendants' illustrations, the overall feel varies, namely in that plaintiffs' illustrations—with leaves and children and action scenes—are much more animated than defendants', which come across as more utilitarian. Accordingly, the two sets of illustrations lack the substantial similarity required to support a copyright infringement claim.

### III.  CONCLUSION

Because defendants' works on tree house design are not substantially similar to plaintiffs' as a matter of law, defendants' motion to dismiss the complaint is granted. Plaintiffs' motion for partial summary judgment in its favor is denied.

Dated: New York, New York
       August 5, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.